# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SALUSSOLIA, FLEMING, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant ERIC A. RAMOS-CRUZ**
**United States Army, Appellant**

ARMY 20150292

Headquarters, Fort Drum
S. Charles Neill and Teresa L. Raymond, Military Judges
Colonel Patrick D. Pflaum, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain Alexander N. Hess, JA (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Thomas J. Darmofal, JA (on brief).

27 February 2020

-----------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
-----------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

We find the military judge did not err denying the defense motion to elicit the "romantic" nature of the victim's relationship with another soldier. We also find the military judge's ruling to admit appellant's entire 127-page Correctional Treatment File (CTF) from the United States Disciplinary Barracks (USDB) as a government rebuttal exhibit during the pre-sentencing phase did not prejudice appellant. The case's lengthy procedural history follows.

At appellant's first court-martial in 2015, a military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of six specifications of assault in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [UCMJ]. The military judge convicted appellant, contrary to his pleas, of one

specification of cruelty and maltreatment, three specifications of abusive sexual contact, one specification of forcible sodomy, and one specification of assault consummated by a battery, in violation of Articles 93, 120, 125, and 128, UCMJ. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for twelve years, and reduction to the grade of E-1. In January 2017, this court summarily affirmed the findings of guilty and sentence from appellant's first court-martial. *United States v. Ramos-Cruz*, ARMY 20150292 (Army Ct. Crim. App. 30 Jan. 2017).

In July 2017, the Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded the case to this court for a new review under Article 66, UCMJ, in light of *United States v. Hills,* 75 M.J. 350 (C.A.A.F. 2016), and *United States v. Hukill,* 76 M.J. 219 (C.A.A.F. 2017). *See United States v. Ramos-Cruz*, 76 M.J. 442 (C.A.A.F. 2017).

On this remand, in December 2017, we set aside the findings of guilty as to two of the three specifications of abusive sexual contact and one specification of forcible sodomy in light of our superior court's decisions in *Hills* and *Hukill*. *See United States v. Ramos-Cruz*, ARMY 20150292, 2017 CCA LEXIS 759, at *6 (Army Ct. Crim. App. 11 Dec. 2017). We affirmed the remaining findings of guilty, set aside the sentence, and authorized a findings rehearing on the three set aside specifications and a sentence rehearing. *Id.*

At appellant's rehearing court-martial, in June 2018, a military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of forcible sodomy, in violation of Article 125, UCMJ. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for ten years, and reduction to the grade of E-1.

Appellant's case is again before us for our Article 66, UCMJ review. Appellant asserts four assignments of error and one matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Two assignments of error merit discussion and none merit relief.[1]

---

[1] We have given full and fair consideration to appellant's other assignments of error and the one matter submitted pursuant to *Grostefon* and find they merit neither discussion nor relief.

## BACKGROUND

At his rehearing court-martial, appellant was again convicted of forcibly sodomizing Private E-2 (PV2) AG in early March 2014.[2] As there were no witnesses to the sodomization, beyond appellant and PV2 AG, the defense trial strategy centered on attacking PV2 AG's credibility.

In late March 2014, PV2 AG spoke to Army Criminal Investigation Command (CID) agents regarding appellant's forcible sodomization. In early May 2014, PV2 AG, who was separated from her spouse but not yet divorced, was investigated by CID agents for engaging in an alleged adulterous relationship with a fellow soldier, Specialist (SPC) T. At the rehearing trial, defense counsel desired to cross-examine PV2 AG regarding her alleged adulterous relationship with SPC T and whether she lied to CID regarding the affair. Appellant now asserts the military judge erred by failing to allow the defense to ask PV2 AG whether she lied to CID about having a "romantic" relationship with SPC T. The military judge did, however, allow the defense to ask PV2 AG whether she lied to CID regarding a relationship with SPC T.

During the pre-sentencing phase, the government moved to admit into evidence, as a self-authenticating document, appellant's entire CTF detailing his behavior while incarcerated at the USDB. The CTF contained positive and negative information regarding appellant's behavior during his incarceration. The defense objected to the admission of the entire CTF on multiple grounds. The military judge initially denied the admission of the CTF ruling the government failed to provide the defense with a reasonable written notice of the intent to offer the exhibit. After the defense's pre-sentencing case, however, the government moved to admit appellant's entire CTF as rebuttal evidence to negate the testimony by appellant and his sister regarding his positive behavioral changes while incarcerated in the USDB.

Specifically, appellant's sister testified "[appellant] has changed a lot from before he got confined . . . . [Y]ou can see he's more mellow, he reacts different, he talks different, he's just all around different. He realizes that there's consequences to actions, and he knows that he should do better and that he would do better." During his unsworn statement, appellant outlined the positive behavioral skills he acquired during his incarceration stating "that's the way I've been doing it for the last three and half years now [in the USDB], it's on my word, . . . I don't want to be anything like I was in the past." The military judge ruled to admit the entire CTF as rebuttal evidence stating the exhibit was "simply rebuttal evidence that [appellant] has changed or not changed [in the USDB], that was the door that was opened [by

---

[2] After appellant's first court-martial in 2015, PV2 AG departed the Army and changed her name to Mrs. AV. This opinion will refer to her as PV2 AG, her name at the time of the offense.

defense]; [that he] changed during incarceration, both by his unsworn statement and [his sister's] testimony."

## LAW AND DISCUSSION

### *Military Rules of Evidence 412 and 403 Rulings*

This court reviews a military judge's ruling to exclude evidence under Military Rule of Evidence (Mil. R. Evid.) 412 for an abuse of discretion. *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009); *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). We review a military judge's findings of fact under a clearly erroneous standard and her conclusions of law de novo. *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011).

Evidence of an alleged victim's other sexual behavior or sexual predisposition is generally inadmissible in a sex offense case unless an exception applies. Mil. R. Evid. 412(a). "Evidence of a relationship, even a romantic or dating relationship, *absent more*, is insufficient to create a reasonable inference of either sexual behavior or sexual predisposition that would trigger Mil. R. Evid. 412's exclusions." *United States v. Alston*, 75 M.J. 875, 883 (Army Ct. Crim. App. 2016) (emphasis added). Evidence is admissible if its exclusion would violate appellant's constitutional rights. Mil. R. Evid. 412(b)(1)(C). Before admitting evidence as constitutionally required under Mil. R. Evid. 412(b)(1)(C), the military judge must apply Mil. R. Evid. 403. *United States v. Gaddis*, 70 M.J. 248, 256 (C.A.A.F. 2011). Military R. of Evid. 403 states a "military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

The narrow issue before this court is whether the military judge erred by denying the defense request to use the one-word adjective, "romantic," to describe PV2 AG and SPC T's relationship. Two potential questions exist. First, did the military judge err by finding Mil. R. Evid. 412 was triggered? Second, if Mil. R. Evid. 412 was triggered, did the military judge err in her Mil. R. Evid. 403 analysis?

As to the first question, appellant argues the military judge applied Mil. R. Evid. 412 too broadly. At first blush the military judge's application of Mil. R. Evid. 412 could appear erroneous, but we find to the contrary upon a closer review of the defense counsel's asserted purpose for using the word "romantic."

At the beginning of the Mil. R. Evid. 412 motion hearing, defense counsel specifically stated they did not seek to insinuate or delve into any details as to the sexual nature, if any, of PV2 AG and SPC T's relationship. Defense counsel stated "we are not trying to talk about the sex in any way, shape, or form . . . ." If defense counsel had maintained this non-sex stance, the military judge's denial of the use of

the word "romantic" would likely have been an erroneous application of Mil. R. Evid. 412. In the middle of the motion hearing, however, defense counsel asserted the word "romantic" was relevant to establish that PV2 AG lied to CID to protect herself against an adultery charge.

We pause to recognize that the offense of adultery requires as an element of proof that "sexual intercourse" occurred between two people. *See* Article 134 ¶ 62.b.(1), UCMJ. Defense counsel highlighted the sexual undertones surrounding their desired use of the word "romantic" by arguing that the probative value of the word "romantic" was to show PV2 AG "would potentially get in trouble" for the relationship with SPC T because "it was sexual in nature, [and] that's our position."

Although the defense attempted to avoid triggering Mil. R. Evid. 412, counsel's proffered theory of the relevance of the word "romantic" was to prove PV2 AG engaged in other sexual behavior—sexual intercourse with SPC T amounting to adultery. The defense request to use the word "romantic" was a veiled attempt to infer something "*more*" than a mere dating relationship. *Alston*, 75 M.J. at 883 (emphasis added). Under this scenario, the military judge did not err in finding Mil. R. Evid. 412 was triggered.

As to the second question, we note the importance of Mil. R. Evid. 401 and 402 as the first steps in the equation in deciding if evidence is admissible. A military judge must first determine if the proffered evidence is relevant prior to its admission and the application of any balancing test under Mil. R. Evid. 403. *See generally* Mil. R. Evid. 401-403. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence." Mil. R. Evid. 401. Military R. Evid. 402 clearly directs "[i]rrelevant evidence is not admissible."

The military judge found the relevance of defense counsel's desired cross-examination was to attack PV2 AG's lack of credibility and her "willingness to lie or not lie [to CID] about something of significant value."[3] Under this context, the military judge found the word "romantic" was not relevant and failed the Mil. R. Evid. 403 balancing test. The military judge allowed defense cross-examination of PV2 AG regarding her relationship with SPC T as follows:

Q: [PV2 AG], in May 2014 you were investigated by CID, correct?

A. Yes, Ma'am.

---

[3] We concur with the military judge that the defense did not establish as a ground for admission that PV2 AG possessed a motive to fabricate about a "romantic" relationship with SPC T in order to protect her marriage.

Q. And that was regarding [SPC T]?

A. Yes, Ma'am.

Q. You understood it was important to tell the truth?

A. Yes, Ma'am.

Q. They asked you about your relationship with [SPC T]?

A. Yes, Ma'am.

Q. You initially lied about it, didn't you?

A. Yes, Ma'am.

Q. Because you thought you would get in trouble?

A. Yes, Ma'am.

Although the military judge provided a bare-bones statement that she excluded the word "romantic" under Mil. R. Evid. 403, her ruling more clearly appears as an exclusion of irrelevant evidence under Mil. R. Evid. 402. After conducting our own de novo review, we find the probative value of the one-word adjective "romantic," without reference to "sex in any way, shape, or form" as agreed to by the defense, is low to non-existent, and is substantially outweighed by balancing the factors articulated in Mil. R. Evid. 403. Ultimately, we need not determine if the military judge excluded the word "romantic" under Mil. R. Evid. 402 or 403 because even if she, or this court, has erred in analyzing Mil. R. Evid. 412, 401, 402, or 403, the "damaging potential" of the defense cross-examination of PV2 AG was fully realized and we find any error harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (the Court holding "that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to . . .harmless-error analysis," assuming that "the damaging potential of the cross-examination [was] fully realized.").

Private E-2 AG conceded during cross-examination that she lied to CID agents because she did not want to get in trouble because of her relationship with SPC T. Defense counsel then utilized PV2 AG's cross-examination admission to argue in their closing that she "lied to CID about her relationship with SPC T. She's lying to you today about what's happened here [with appellant.]" If PV2 AG was willing to lie to CID agents in May 2014 to avoid potential prosecution for her relationship with SPC T perhaps she lied to CID agents in March 2014, and to everyone else onward, that her sexual acts with appellant were non-consensual and did not constitute adultery. Even without qualifying PV2 AG's relationship with

6

SPC T as romantic, we find the "damaging potential" of the defense cross-examination was fully realized. Any error by the military judge in denying the word "romantic" was harmless beyond a reasonable doubt. *See Id.*

## *Appellant's CTF*

A military judge's decision to admit pre-sentencing evidence is reviewed for an abuse of discretion. *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000). If the military judge abused her discretion by admitting the evidence, we must determine whether the admission of the document substantially influenced the adjudged sentence. *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (quoting *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). To evaluate an evidentiary error for harmlessness, a court must consider the following four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)).

Appellant argues the military judge erred under Mil. R. Evid. 902(11), amid a myriad of other grounds, by admitting appellant's entire CTF as government rebuttal evidence. *See* Mil. R. Evid. 902(11) (outlining the procedures to self-authenticate a certified domestic record of a regularly conducted activity and mandating that before trial unless good cause is found by the military judge at a later time, "the proponent [of evidence] must give an adverse party reasonable written notice of the intent to offer the record."). We could attempt to wax poetic about the nuances of Mil. R. Evid. 902(11), along with multiple other rules of evidence, regarding the military judge's decision to admit appellant's entire CTF. Such discussion would be superfluous, however, because we assume, without deciding, that the military judge erred, but find such error did not substantially influence appellant's sentence.

The military judge stated immediately after announcing appellant's sentence that the CTF "*had no impact* on the court's deliberation on a sentence." (emphasis added). We question if any clearer indicia that appellant's sentence was not substantially influenced could exist beyond the sentencing authority affirmatively stating the exhibit "had no impact." We need not wonder nor debate whether any alleged error had a "substantial influence" on appellant's sentence.

Our superior court has recognized "it is highly relevant when analyzing the effect of error on the sentence that the case was tried before a military judge who is presumed to know the law." *Barker*, 77 M.J. at 384 (C.A.A.F. 2018) (citations omitted) (holding the erroneous admission of victim impact statements during the pre-sentencing phase did not prejudice appellant's sentence). In *Barker*, the court noted the significance of the military judge "specifically stat[ing] on the record" that

he did not give any weight to evidence that did not directly relate to or arise from appellant's crimes contained in victim impact statements which were later deemed erroneously admitted. *Id.* at FN 11; *See also United States v Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008) (finding no prejudice to appellant's sentence, even in the absence of an affirmative statement from the military judge, when there was "no indication that the military judge gave significant weight to the [prison] violations noted in the [erroneously admitted] letter from the [prison] official").

Under the unique facts of this case, where our court can discern with certainty the exact weight, or lack thereof, the military judge prescribed to an erroneously admitted pre-sentencing exhibit, we question if applying the four *Kerr* factors is necessary. Even if we apply the four *Kerr* factors, however, we arrive at the same conclusion. Appellant was not prejudiced.

We have reviewed the erroneously admitted CTF in its entirety. The exhibit balances between outlining USDB infractions by appellant, which are mostly minor in nature, and providing defense favorable evidence of appellant's positive behavior during some of his incarceration. The overall probative weight of the CTF for the government is not high. Even if the military judge had failed to state that the CTF "had no impact," we find the exhibit possessed low materiality.

Appellant pleaded guilty to six specifications of assault against one victim. He was convicted, contrary to his pleas and among other offenses, of an abusive sexual contact involving a second victim and a forcible sodomization involving a third victim. We are convinced, after reviewing the government and defense case, that appellant would have received at least the same sentence despite any alleged error that may have occurred in admitting his entire CTF.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge SALUSSOLIA and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court